UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WALTER LEE MCCARTY, III, )<br>)<br>Plaintiff, )<br>) Civil Action No.<br>v. ) 22-12091<br>)<br>JANE DOE, MICHELLE TUEGEL, )<br>and UNIVERSITY of EVANSVILLE, )<br>)<br>Defendants. )<br>) | |

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTIONS TO DISMISS

**SAYLOR, C.J.**

This is a defamation case involving accusations that a college basketball coach sexually assaulted another college employee. Plaintiff Walter McCarty was previously employed as the head basketball coach at the University of Evansville in Indiana. During his time there, he allegedly had sexual contact with an athletic trainer for the basketball team, identified as Jane Doe. Doe later brought a lawsuit against the university based on alleged sexual misconduct by McCarty. According to the complaint, Jane Doe, Michelle Tuegel (her attorney), and the university made statements in connection with that lawsuit that defamed McCarty and constituted an invasion of his privacy.

Defendants have moved to dismiss the complaint for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. For the following reasons, the motions will be granted on the ground that personal jurisdiction is lacking. The Court will not reach the remaining grounds.

I.     **Background**

Unless otherwise noted, the following facts are set forth as alleged in the first amended complaint, (ECF No. 24).[1]

   A.     **Factual Background**

         1.     **The Parties**

The University of Evansville ("UE") is a private university located in Evansville, Indiana. (*Id.* ¶ 5).

Walter Lee McCarty, III is a Massachusetts resident. (Compl. ¶¶ 2, 10). He was employed as the head basketball coach at UE from 2018 until 2020. (*Id.* ¶¶ 10, 33).

Jane Doe is a resident of Indianapolis, Indiana. (*Id.* ¶ 3). She was previously employed as a certified athletic trainer for the basketball team at UE. (*Id.* ¶ 13).

Michelle Tuegel is a private attorney who resides in Dallas, Texas, and is licensed to practice law in Texas. (*Id.* ¶ 4; Decl. of Michelle S. Tuegel ("Tuegel Decl.") ¶ 1, ECF No. 74-1). In 2021, Attorney Tuegel represented Jane Doe in a lawsuit against UE in the United States District Court for the Southern District of Indiana. (Compl. ¶ 4).

         2.     **McCarty's Employment at UE**

McCarty became the head basketball coach at UE in 2018. (*Id.* ¶ 10). In 2019, he met Jane Doe, who was then an athletic trainer for the team. (*Id.* ¶ 13). In December 2019, Doe and McCarty engaged in some form of sexual contact. (*Id.* ¶ 21).

On December 22, 2019, McCarty met with the athletic director and president of UE, who together informed him that he was the subject of an investigation stemming from a report of

---

[1] On a motion to dismiss, the court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment: (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

misconduct related to his contact with Doe. (*Id.* ¶ 29). He was placed on administrative leave pending the outcome of that investigation. (*Id.* ¶ 30). During the investigation, UE allegedly made statements accusing McCarty of "engag[ing] in non-consensual sexual activity and exhibit[ing] predatory behavior to women." (*Id.* ¶ 32). After UE's inquiry concluded, McCarty's employment was terminated on January 21, 2020. (*Id.* ¶ 33).[2]

### 3. Doe's Lawsuit Against UE and the Alleged Defamatory Articles

In April 2021, Jane Doe (represented by Tuegel) brought suit against UE in the United States District Court for the Southern District of Indiana. *Doe v. University of Evansville*, No. 3:21-cv-00065, ECF No. 1 (S.D. Ind. April 12, 2021). In general terms, that complaint alleged that UE failed to protect Doe from a sexually hostile environment created by McCarty.

According to the present complaint, two news articles written about that lawsuit contained defamatory statements about McCarty. On April 12, 2021, the Evansville Courier & Press published an article summarizing the nature of the lawsuit, excerpting parts of the complaint, and quoting several statements by defendants made either to that paper or in other press releases. (Compl. Ex. A ("Evansville article")). That article was allegedly republished by USA Today. (Compl. ¶ 34). On April 14, 2021, CNN published a similar article with largely the same information. (Compl. Ex. B ("CNN article")). The CNN article also noted: "Tuegel told CNN that her client has also filed a civil claim against McCarty in Massachusetts, where he resides. Court records indicate she has filed a proof of claim and sent his counsel a demand letter[.]" (*Id.* at 2).[3]

---

[2] The complaint asserts that "while on administrative leave, and after McCarty's termination, a 'third-party law firm' conducted a Title IX investigation," but otherwise suggests that his termination followed his period of administrative leave. (Compl. ¶¶ 30-33). That inconsistency appears to be irrelevant to the present motions.

[3] The parties agree that no lawsuit was filed by Doe in Massachusetts. Although it is unclear, it appears likely that the CNN article may have been referring to a proof of claim submitted by Tuegel on Doe's behalf in 2020 as part of a bankruptcy proceeding involving plaintiff. (April 26 McCarty Decl. Ex. B); *see In re Walter McCarty*,

The complaint further asserts that in addition to those two identified articles, "numerous mainstream and nationwide media agencies republished" the statements attributed to defendants. (Compl. ¶ 36).[4] Those articles allegedly caused McCarty to suffer reputational harm. As a result, he "has been unable to secure the same caliber of employment he had at UE, resulting in [him] suffering direct and consequential damages," including "economic injury and loss of income." (*Id.* ¶¶ 45, 62).

B.  **Procedural Background**

McCarty brought this action on December 9, 2022. After some difficulty effecting service on defendants, an amended complaint was ultimately filed on January 24, 2024.

The amended complaint alleges three counts: defamation against Jane Doe and Michelle Tuegel (Count 1); invasion of privacy against Doe and Tuegel (Count 2); and defamation against the University of Evansville (Count 3).

Defendants have each moved to dismiss the claims against them under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(3) for improper venue, and Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted. For the reasons set forth below, the Court will limit its consideration to the motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2).

---

No. 20-12332, Claim 11-1 (Bankr. D. Mass. March 5, 2021). That claim was withdrawn on July 31, 2021. *See In re Walter McCarty*, No. 20-12332, ECF No. 168 (Bankr. D. Mass. July 31, 2021).

[4] As part of his opposition to UE's motion McCarty has also submitted an article apparently published by the Boston Globe that reports on the Title IX investigation and his being placed on administrative leave. (April 5, 2024 Decl. of Walter Lee McCarty, III ("April 5 McCarty Decl.") at 2, Ex. C, ECF No. 54). That article appears to republish a statement made by the president of UE to the university community. The complaint does not mention the president's statement, nor allege that it was defamatory. There is no evidence to suggest that the article was the result of an intentional act by any defendant.

II.     **Standard of Review**

The exercise of personal jurisdiction over a defendant must be authorized by statute and accord with the due-process requirements of the U.S. Constitution. *See A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016). Consistent with those requirements, a court may exercise either general or specific jurisdiction. *See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 35 (1st Cir. 2016).

> Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities. General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.

*United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001) (citations omitted).

The plaintiff bears the burden of establishing that the court has personal jurisdiction over a defendant. *See Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 94 (1st Cir. 2024). Where, as here, the court considers a motion to dismiss under Fed. R. Civ. P. 12(b)(2) without first holding an evidentiary hearing, the *prima facie* standard applies. *See Swiss Am. Bank*, 274 F.3d at 618.

Under that standard, the court takes the plaintiff's "properly documented evidentiary proffers as true and construe[s] them in the light most favorable to [the plaintiff's] jurisdictional claim." *A Corp.*, 812 F.3d at 58. The plaintiff may not "rely on unsupported allegations in its pleadings." *Id.* (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006)) (alteration omitted). Instead, the plaintiff "must put forward 'evidence of specific facts' to demonstrate that jurisdiction exists." *Id.* (quoting *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995)). In other words, plaintiffs cannot "rely solely on conclusory averments but must adduce evidence of specific facts." *Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 54 (1st Cir. 2020). Facts offered by the defendant "become part of the mix

only to the extent that they are uncontradicted." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009) (quoting *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007)).

### III. Analysis

Defendants have each moved to dismiss the complaint under Rule 12(b)(2) on the ground of lack of personal jurisdiction. Plaintiff contends, in substance, that their intentional actions directed toward harming his reputation and business relationships in Massachusetts are sufficient to establish personal jurisdiction.

A federal court can assert specific personal jurisdiction over an out-of-state defendant in a diversity case only if the state long-arm statute so allows and the exercise of jurisdiction comports with constitutional due process. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002). The Court will limit its analysis to whether plaintiff has met the minimum threshold required by the Constitution.[5]

#### A. General Jurisdiction

For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). For a foreign-state corporation, a court may assert general jurisdiction "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 919 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 317 (1945)). To be "at home" in a foreign state, a corporation must have affiliations with that state so substantial that it is "comparable to a domestic enterprise in that State." *Daimler AG*

---

[5] The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, is "not coextensive with what due process allows," but contains its own specific (and narrower) statutory requirements. *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 330 n.9 (2017). Even so, because the Court determines that asserting personal jurisdiction does not satisfy the minimum requirements of constitutional due process, it need not consider whether it could be authorized under the more restrictive requirements of the Massachusetts long-arm statute.

*v. Bauman*, 571 U.S. 117, 133 n.11 (2014).  The Supreme Court has indicated that such jurisdiction will exist only in the "exceptional case." *Id.* at 139 n.19.

Doe is an Indiana resident who is not employed, and does not own any property, in Massachusetts.  Tuegel is a Texas resident who is not employed, and does not own any property, in Massachusetts.  UE is a private university that is both incorporated in and has its principal place of business in Indiana.  UE is not alleged to transact any business in Massachusetts or with any Massachusetts-based entities, other than plaintiff's assertion that he was a resident of Massachusetts during his employment at UE.  (April 26, 2024 Decl. of Walter Lee McCarty, III ("April 26 McCarty Decl.") at 1, ECF No. 67).[6]  There is, however, no evidence of any continuous systemic contact by any defendant with Massachusetts such that they would be "at home" in the Commonwealth.  Accordingly, this court may not assert general jurisdiction over defendants.

B.     **Specific Jurisdiction**

Due process requires that a defendant over whom a court seeks to exercise specific jurisdiction has maintained "minimum contacts" with the state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021).  That standard requires "a demonstrable nexus between the complaint's claims and the activities in the forum." *PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 18 (1st Cir. 2019) (quotation marks omitted).  The minimum-contacts analysis has three prongs— relatedness, purposeful availment, and reasonableness:

---

[6] McCarty asserts that he "maintained [his] residence" in Lincoln, Massachusetts, throughout his employment at UE, corresponded with UE from Massachusetts, maintained a Massachusetts driver's license, and paid state income tax in Massachusetts.  (April 26 McCarty Decl. ¶¶ 2-6).  It is unclear how McCarty could have performed full-time duties as a head coach in Indiana while residing in Massachusetts.

> First, the plaintiff's claim must directly arise from or relate to the defendant's activities in the forum. Second, the defendant's forum-state contacts must "represent a purposeful availment of the privilege of conducting activities in that state." Third, the exercise of specific jurisdiction in the forum must be reasonable under the circumstances.

*Chen*, 956 F.3d at 59 (citing *Scottsdale Cap. Advisors v. The Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018)) (internal citations omitted). "Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction." *Scottsdale Cap.*, 887 F.3d at 20.

### 1. **Relatedness**

"To satisfy the relatedness prong, [plaintiff] must show a nexus between [its] claim and the defendants' forum-based activities." *Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 160 (1st Cir. 2022). For tort claims, the relatedness inquiry "focuses on whether the defendant's in-forum conduct caused the injury or gave rise to the cause of action." *Swiss Am. Bank*, 274 F.3d at 622. The complaint does not allege that defendants made these remarks while physically located in Massachusetts. However, "the tort of libel is generally held to occur wherever the offending material is circulated." *Keeton v. Hustler Mag.*, 465 U.S. 770, 777 (1984) (citing Restatement (Second) of Torts § 577A (1997)).

The complaint here alleges that plaintiff has suffered an injury to his professional reputation as a basketball coach in Massachusetts due to defendants' defamatory remarks, which were apparently made in Indiana. It does not specifically allege that those remarks were in fact read by any Massachusetts audience, or even that they were specifically circulated in Massachusetts. Instead, it appears to rely on the theory that a Massachusetts audience might have read them because they were republished on various publicly available websites, such as those of USA Today and CNN—although that inference is not actually pleaded in the complaint.

In *Scottsdale Capital*, the First Circuit held that the plaintiff had not satisfied the relatedness test to establish personal jurisdiction in New Hampshire where it failed to provide

evidence that either of the two in-state e-mail newsletter subscribers who received an allegedly defamatory article had actually opened the article and read its contents.  887 F.3d at 21-22.  Because proving defamation "require[s] evidence that a third party apprehended the defamatory communication," and the relatedness inquiry "require[s] at least some actionable defamation within the state," a failure to allege in-state apprehension of the defamatory material was fatal to the relatedness prong of the personal-jurisdiction test.  *Id.* at 22.  However, the First Circuit left open the possibility that a plaintiff who could show that the allegedly defamatory content had a much larger pool of potential readers or viewers, even without proof that those readers actually apprehended the content, could constitute "circumstantial evidence . . . sufficient to create a presumption of publication."  *Id.* at 21-22.

The First Circuit revisited that possibility in *Lin v. TipRanks, Ltd.*, 19 F.4th 28 (1st Cir. 2021).  There, the plaintiff alleged that an Israeli company defamed her by posting low ratings of her professional performance on a publicly available website.  *Id.* at 30-31.  The court considered whether personal jurisdiction could be authorized under the relatedness prong of the inquiry when the plaintiff had failed to show that anyone in Massachusetts had actually apprehended any of the purportedly defamatory material.  *Id.* at 34-41.  The "crucial question for relatedness purposes" there was "what the record show[ed] in terms of permitting the inference that any prospective employer to whom [the plaintiff] applied did look at the ranking."  *Id.* at 38.  The court determined that the record did not contain enough evidence to support the chain of inferences necessary to support personal jurisdiction.  *Id.* at 39-41.

Here, plaintiff has provided no evidence that anyone in Massachusetts apprehended any of the allegedly defamatory statements made by defendants, let alone the specific statements made in the two articles referred to in the complaint.  However, the potential readership of

9

national news outlets—especially those freely accessible online—is substantially larger than the potential pool of readers at issue in either *Scottsdale Capital* or *TipRanks*.  That broad readership might be sufficient to constitute "circumstantial evidence" of publication, as it is at least plausible that a potential employer in Massachusetts could have apprehended the statements made to a national news source.  The Court will therefore assume, without deciding, that plaintiff has carried his burden to show a jurisdictional nexus between his claims and Massachusetts.

### 2. Purposeful Availment

In the context of a defamation suit, the First Circuit has held that "[t]he decisive due process issue . . . is whether the defendants' activities satisfy the purposeful availment requirement."  *Noonan v. Winston Co.*, 135 F.3d 85, 90 (1st Cir. 1998).  To meet that requirement, the plaintiff must show a defendant's "intentional conduct [in a foreign state was] calculated to cause injury to [the plaintiff] in [the forum state]."  *Calder v. Jones*, 465 U.S. 783, 791 (1984).  That does not mean, however, that jurisdiction may be authorized in any forum in which a defendant experienced an injury.  *See Walden v. Fiore*, 571 U.S. 277, 278 (2014) ("[M]ere injury to a forum resident is not a sufficient connection to the forum.").  Instead, the "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [them] to the forum in a meaningful way."  *Id.*  "The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state."  *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995) (quoting *Keeton*, 465 U.S. at 774).

The "key focal points" of the purposeful-availment analysis are voluntariness and foreseeability:  "[t]he contacts must be voluntary and not based on the unilateral actions of another party," and "the defendant's contacts must be such that he could reasonably anticipate being haled into court there."  *Adelson*, 510 F.3d at 50 (internal citations and quotations omitted).

In defamation cases, courts are guided by an "effects test" set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. at 783. In *Calder,* the Supreme Court held that a California court could exercise personal jurisdiction over two Florida-based reporters based on their "intentional, and allegedly tortious, actions [that] were expressly aimed at California":

> The allegedly libelous story concerned the California activities of a California resident . . . whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California.

465 U.S. at 788-89. The fact that the National Enquirer—the magazine that published the allegedly libelous story—had its largest circulation in California, averaging 600,000 copies sold per week, was additional evidence that defendants had purposefully availed themselves of the forum state. *Id.* at 790. Similarly, in *Keeton v. Hustler Magazine*—published the same day as *Calder*—the Supreme Court found that the defendant's average monthly sale of 10,000 to 15,000 magazines in New Hampshire showed that it "continuously and deliberately exploited the New Hampshire market" and "must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." 465 U.S. at 781. The Supreme Court has since further clarified that "[t]he crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff," and "[t]hat connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction." *Walden*, 571 U.S. at 287-88.

Unlike the situation in *Calder*, plaintiff here has not sufficiently alleged that any of defendants' purportedly tortious statements "were expressly aimed at" Massachusetts. *Calder*, 465 U.S. at 789. While Massachusetts may have been the locus of the harm allegedly suffered to plaintiff's reputation, it was not the "focal point . . . of the story." *Id.* at 790.

11

None of the underlying conduct that sparked Doe's lawsuit against UE occurred in Massachusetts. None of the news stories submitted by plaintiff—either about that conduct or the later litigation—originated in Massachusetts. The lawsuit itself was filed and litigated in Indiana. McCarty's employment at UE, and his later termination, happened in Indiana. None of defendants' alleged statements concerned any actions by plaintiff in Massachusetts. The stories did not draw on any Massachusetts sources, or were specifically aimed at a Massachusetts audience.

Even crediting McCarty's assertion that he remained a resident of Massachusetts throughout his time at UE and afterwards—including the entire period he was employed full-time in Indiana—that fact alone does not establish defendants' knowledge of McCarty's residence at the time of the relevant statements.[7] At best, it might be supposed that UE could have known that McCarty resided in Massachusetts. But there is no evidence supporting the bare proposition that either Doe or Tuegel knew that their statements would affect McCarty in Massachusetts. (*See* Compl. ¶ 7).

Nor is there any evidence that defendants deliberately circulated or publicized any posts in the Massachusetts market or received remuneration for doing so, as in *Calder* and *Keeton*. Indeed, the Evansville article was published by the Evansville Courier & Press, which—although the complaint is devoid of any allegations about its readership—can reasonably be inferred to target an audience in Indiana and Kentucky, not Massachusetts. It is irrelevant in analyzing the actions and intent of defendants that the Evansville article may later have been republished by

---

[7] Again, although McCarty asserts that he maintained a residence in Massachusetts throughout his employment with UE, the complaint makes several mentions of his "home" and "residence" in Indiana during his employment there. (*Compare* Compl. ¶¶ 20-25, *with* April 26 McCarty Decl. ¶¶ 2-6).

USA Today, at least absent a showing that any of defendants knew that their statements to a newspaper in Evansville would later be disseminated in the Massachusetts market.

In short, the only specific statements attributed to defendants (1) discuss the lawsuit brought in Indiana, (2) are based on his employment at an Indiana university, and (3) concern alleged conduct that occurred in Indiana.  (Compl. Exs. A and B).

Furthermore, the complaint does not allege that any specific statements made by either UE or Doe involve Massachusetts in any way.  The only specific statement cited in the complaint that explicitly mentions Massachusetts is attributed to Tuegel.  (*See* Compl. Ex. B at 2). Specifically, the CNN article states:  "Tuegel told CNN that her client has also filed a civil claim against McCarty in Massachusetts, where he resides." (*Id.*).  The article itself is ambiguous as to whether Tuegel herself stated that plaintiff resided in Massachusetts, or whether that fact was reported separately.  But more importantly, plaintiff has submitted no evidence that Tuegel undertook any other action that was targeted to Massachusetts.  She is not alleged to have deliberately exploited the Massachusetts market, or engaged in any conduct that sought the publication of any of her statements in Massachusetts.  At most, Tuegel's statements are evidence that she knew that plaintiff was a resident of Massachusetts, and "[a] defendant's awareness of the location of the plaintiff is not, on its own, enough to create personal jurisdiction over a defendant." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 28 (1st Cir. 2008).[8]

In any event, *Calder* does not permit the exercise of personal jurisdiction on all out-of-state tortfeasors whose actions lead to in-state injury.  Indeed, the First Circuit has cautioned that

---

[8] Similarly, Tuegel filing a proof of claim on Doe's behalf in the Bankruptcy Court during the pendency of the prior lawsuit is not sufficient to show that her statements to news sources were intended to cause injury in Massachusetts.  It was also not foreseeable that her consent to jurisdiction in those circumstances would subject her to jurisdiction in an unrelated case, as a party's consent to jurisdiction in one proceeding obviously does not necessarily subject them to personal jurisdiction in that forum in any future proceedings.  *See In re Lac Megantic Train Derailment Litig.*, 210 F. Supp. 3d 218, 227 (D. Me. 2016).

13

*Calder* "cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction." *Swiss Am. Bank*, 274 F.3d at 623.  Along with effects in the forum state, there must be "some indication that the defendants reached into the forum, such as mail or telephone contacts" or solicitation of business.  *Id.* at 622.  In *Walden v. Fiore*, the Supreme Court clarified the *Calder* "effects test," rejecting the plaintiff's attempt to assert personal jurisdiction over a Georgia police officer whose seizure of plaintiff's cash in a Georgia airport caused the plaintiff foreseeable financial harm in his home state of Nevada:

> [O]ur "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. . . . Accordingly, we have upheld the assertion of jurisdiction over defendants who have purposefully reached out beyond their State and into another by, for example, entering a contractual relationship that "envisioned continuing and wide-reaching contacts" in the forum State, or by circulating magazines to deliberately exploit a market in the forum State . . . . But the plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.

571 U.S. at 285 (quotation marks and citations omitted).

Here, there is no evidence that defendants "reached into" Massachusetts, *Swiss Am. Bank*, 274 F.3d at 622, or deliberately "reached out beyond their [home] state," *Walden*, 571 U.S. at 285.  At most, they made certain statements to reporters in Indiana that were later made available to audiences in all fifty states, including Massachusetts.  Because plaintiff appears to be the "only link between the defendant[s] and the forum," *Walden*, 571 U.S. at 285, plaintiff has not satisfied the purposeful-availment requirement.

In short, Indiana is clearly (and overwhelmingly) the focal point of plaintiff's allegations, and none of defendants' alleged conduct evidences a deliberate effort to reach into Massachusetts.  There is, therefore, no ground from which to conclude that defendants

purposefully availed themselves of the forum, and asserting personal jurisdiction over them under the circumstances would not comply with the requirements of constitutional due process.

### 3. Reasonableness

Because plaintiff has failed to show that defendants have met the purposeful-availment test of minimum contacts in the forum state, this "eliminates the need even to reach the issue of reasonableness." *Sawtelle*, 70 F.3d at 1394. "[T]he [g]estalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled." *Id.* (citing *United Elec., Radio and Mach. Workers of America v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1091 n.11 (1st Cir. 1992)).

In sum, defendants do not have "minimum contacts" with Massachusetts "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. Because the claim underlying the litigation only tenuously arises out of, or relates to, defendants' forum-state activities, and because defendants' in-state contacts do not represent a purposeful availment of the privilege of conducting activities in the forum state, the exercise of personal jurisdiction over defendants would be inconsistent with the requirements of due process. *Daynard*, 290 F.3d at 60. Accordingly, defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(2) will be granted.[9]

---

[9] Because this Court cannot establish personal jurisdiction over defendants, it need not consider whether the case should be dismissed for improper venue under Fed. R. Civ. P. 12(b)(3), or for failing to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

## IV. <u>Conclusion</u>

For the foregoing reasons, defendants' motions to dismiss are GRANTED. The Clerk is directed to enter a separate order of dismissal.

**So Ordered.**

Dated: August 15, 2024

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court